UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| DAVID L. SIMPSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:17-cv-00185-WTL-DLP |
| | ) | |
| COX D. Correctional Officer, | ) | |
| | ) | |
| Defendant. | ) | |

**Entry Granting Motion for Summary Judgment
and Directing Entry of Final Judgment**

Plaintiff David L. Simpson, an inmate at the United States Penitentiary in Marion, Illinois, filed this civil action based on events and circumstances which occurred while Mr. Simpson was incarcerated at the Federal Correctional Institution in Terre Haute, Indiana. He alleges that Officer Cox forced him to remain in a flooded cell, verbally assaulted Mr. Simpson, and told other inmates and staff (falsely) that Mr. Simpson was a sex offender and child molester so that Mr. Simpson would be taunted and tormented by other offenders. He further alleges that after he reported Officer Cox's misconduct on November 16, 2016, Officer Cox entered Simpson's cell and attempted to throw Mr. Simpson on the ground. In the process, Officer Cox slipped and fell, hitting his head on the bunkbed. After falling, Officer Cox yelled "stop resisting" and another guard radioed for back up. During this time, Mr. Simpson was not resisting. Officer Cox claimed resistance in an effort to justify his unreasonable use of force. Other unknown officers then entered the cell and joined in hitting, kicking, and punching Mr. Simpson.

The defendant seeks summary judgment arguing that Mr. Simpson failed to exhaust his available administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42

U.S.C. § 1997e(a), before filing this lawsuit. For the reasons explained below, the motion for summary judgment, Dkt. No. 34, is **granted.**

## I. Standard of Review

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying" designated evidence which "demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the non-movant may not rest upon mere allegations. Instead, "[t]o successfully oppose a motion for summary judgment, the nonmoving party must come forward with specific facts demonstrating that there is a genuine issue for trial." *Trask–Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 677 (7th Cir. 2008). "The non-movant will successfully oppose summary judgment only when it presents definite, competent evidence to rebut the motion." *Vukadinovich v. Bd. of Sch. Trs.*, 278 F.3d 693, 699 (7th Cir. 2002) (internal quotation and citation omitted).

A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find for the non-moving party. *Id.* If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris*, 550 U.S. 372, 380 (2007). The Court views the facts in the light most favorable to the non-moving party, and all reasonable inferences are drawn in the non-movant's favor. *Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011).

"The applicable substantive law will dictate which facts are material." *National Soffit & Escutcheons, Inc., v. Superior Systems, Inc.*, 98 F.3d 262, 265 (7th Cir. 1996) (citing *Anderson*, 477 U.S. at 248). The substantive law applicable to this motion for summary judgment is the PLRA, which requires that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e; s*ee Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532 (citation omitted). The requirement to exhaust provides "that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006) (citation omitted).

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91; *see also Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004) ("In order to properly exhaust, a prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'") (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)). "In order to exhaust administrative remedies, a prisoner must take all steps prescribed by the prison's grievance system." *Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2004).

It is the defendant's burden to establish that the administrative process was available to Mr. Buchanan. *See Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015) ("Because exhaustion is an affirmative defense, the defendants must establish that an administrative remedy was available and that [the plaintiff] failed to pursue it."). "[T]he ordinary meaning of the word 'available' is

'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016) (internal quotation omitted). "[A]n inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* at 1859 (internal quotation omitted).

## II. Undisputed Facts

The following facts, construed in the manner most favorable to Mr. Simpson as the non-movant, are undisputed for purposes of the motion for summary judgment.

Mr. Simpson was an inmate at the Federal Correctional Institution in Terre Haute, Indiana ("FCI Terre Haute") from September 22, 2016, through November 28, 2016. On November 28, 2016, he was transferred to the United States Penitentiary in Marion, Illinois, and is still currently housed there. Mr. Simpson asserts that he used the "Administrative Remedy process available to federal prison inmates" to exhaust these claims and identifies "Remedy ID: 887001" as the remedy case number purportedly encompassing his allegations in this action. Dkt. No. 2.

### A. Bureau of Prisons' Administrative Remedy System

The Bureau of Prisons (BOP) has promulgated an administrative remedy system which appears at 28 C.F.R. § 542.10, et seq., and BOP Program Statement 1330.18, Administrative Remedy Program ("P.S. 1330.18"), which was in effect at FPC Terre Haute during the entire time that Mr. Simpson was housed there. The BOP administrative remedy process is a method by which an inmate may seek formal review of a complaint related to any aspect of his imprisonment. 28 C.F.R. § 542.10.

All BOP Program Statements are available for inmate access via their respective institution law library, including BOP Program Statement 1330.18, Administrative Remedy Procedures for Inmates, and Institution Supplement THX-1330.18B, Administrative Remedy Program. Additionally, administrative remedy filing procedures are outlined and explained to the inmates

each time they arrive at a federal prison as part of the Admission and Orientation process. Inmates are likewise instructed where to find the BOP Policy, FCC Terre Haute Institution Supplements, and how to access the inmate Electronic Law Library. Finally, inmates are informed that if they have an issue or question for staff, they can ask in-person or submit an Inmate Request to Staff by hard copy or electronically to a staff resource e-mailbox. Mr. Simpson acknowledged that he received information concerning the BOP administrative remedy program upon his arrival at FCI Terre Haute. Dkt. No. 34-4.

All administrative remedy requests filed by inmates are logged and tracked in the SENTRY computer database, which is an electronic record keeping system utilized by the BOP. To exhaust his remedies, an inmate must typically first file an informal remedy request through an appropriate institution staff member via a BP-8 prior to filing a formal administrative remedy. If the inmate is not satisfied with the response to his informal remedy (BP-8), he is required to first address his complaint with the Warden via a BP-9. If the inmate is dissatisfied with the Warden's response, he may appeal to the Regional Director via a BP-10. If he is dissatisfied with the Regional Director's response, then the inmate may appeal to the General Counsel via a BP-11. An inmate who has filed administrative remedies at all required levels and who has received a response to his appeal from the General Counsel, is deemed to have exhausted his administrative remedies as to the specific issue, or issues, properly raised therein. *See* 28 C.F.R. § 542.15 ("Appeal to the General Counsel is the final administrative appeal."). Although assigned a remedy identification number, rejected submissions are not considered "filed."

The deadline for completion of informal resolution and submission of a formal written administrative remedy request, on the appropriate BP-9 form, is 20 calendar days following the date on which the basis for the request occurred. *See* 28 C.F.R. § 542.14(a).

An exception to the initial filing at the institutional level (BP-9) exists if the inmate reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if the Request became known at the institution. 28 C.F.R. §542.14. Additionally, appeals of a DHO hearing are filed directly with the region. In this instance, the inmate may submit the initial request directly to the Regional Director (sensitive BP-10), and the submission must contain the word "sensitive" on the envelope, and contain a written explanation of the inmate's reasoning for not following the normal course and filing initially at the institutional level. If the Regional Administrative Remedy coordinator agrees the issue is sensitive, the Request will be accepted, and processed accordingly. If the Regional Administrative Remedy Coordinator disagrees, the request will not be accepted (i.e., rejected), the inmate will be advised of the rejection in writing, and the inmate will be directed to initiate his exhaustion efforts locally at the institutional level by filing a BP-9 with the Warden. An inappropriate sensitive BP-10 which is rejected at the Regional level, does not initiate the BOP's administrative remedy process, nor does it qualify as complete exhaustion as to the issues raised therein.

### B. Mr. Simpson's Administrative Remedies

A review of Mr. Simpson's administrative remedy filings indicates that, in 2016, he filed only one remedy, Remedy No. 887001-R1. On December 27, 2016, the BOP North Central Regional Office received a BP-10 from Mr. Simpson, which was assigned Remedy No. 887001-R1. In Remedy No. 887001-R1, Mr. Simpson alleges that, while he was in the Special Housing Unit ("SHU") at FCI Terre Haute, he was assaulted by several officers. Specifically, Mr. Simpson claims, among other allegations, that, on November 15, 2016, "SHU Officer Cox verbally accosted [him] and told the whole SHU that [he] was a 'chomo,'" leading to other inmates taunting and tormenting him, and that Officer Cox and other officers assaulted him on November 17, 2016,

after Officer Cox tried to throw Mr. Simpson to the ground, but instead fell and hit his head. Remedy No. 887001-R1 makes no mention of Mr. Simpson allegedly being forced to remain in a flooded cell.

The North Central Regional Office rejected Remedy No. 887001-R1 on December 28, 2016, because Mr. Simpson was required to file issues separately, but the remedy raised more than one issue in a single appeal, and because he did not first file a BP-9 through the institution prior to filing his BP-10 appeal. Mr. Simpson was instructed to resubmit his appeal in proper form within 10 days of the date of rejection.

Mr. Simpson, however, did not follow the Region's instructions to resubmit the remedy at the proper level, the institution. Instead, Mr. Simpson submitted a BP-11 to the BOP Central Office, which was received on January 23, 2017, and assigned Remedy No. 887001-A1. The Central Office rejected the submission on February 7, 2017, noting that Mr. Simpson did not sign his request or appeal and that he submitted his appeal to the wrong level, concurring with the Regional Office's rationale for rejecting his prior submission. The Central Office further instructed Simpson to follow the directions provided on the prior rejection notice and informed him that his appeal must be sent to the institution first so the Warden could address his allegations.

Again, Mr. Simpson did not follow the instructions to resubmit his remedy at the proper level, the institution. Instead, Mr. Simpson filed a complaint in this Court on April 24, 2017.

### III. Discussion

The defendant seeks dismissal of this action on the basis that Mr. Simpson failed to exhaust his available administrative remedies prior to filing this action. There is no dispute that Mr. Simpson failed to exhaust his administrative remedies. Instead, Mr. Simpson argues that: (1) it would have been futile and frivolous to file a remedy at Marion for an event that occurred at Terre

Haute; (2) Case Manager Edmeister stated that this was the proper procedure; and (3) North Central Regional Office erroneously labeled the grievance as a DHO appeal. *See* Dkt. No. 41 at 2, ¶ 6. Mr. Simpson further asserts that he was unable to file a request at Terre Haute because "he was in fear for his life" and was forced to file his administrative remedies at Marion instead. Dkt. No. 48. He alleges that upon arrival at Marion, he worked with a "jailhouse lawyer to submit all remedies, tort claims and to file his complaint" and that "[a]t all steps of this arduous process the Plaintiff followed the directions of the institutional staff and his Unit Team." *Id.*

First, it is undisputed Mr. Simpson was required to exhaust his available administrative remedies. Second, as explained below, the undisputed facts reflect that the BOP has met its burden to establish that the administrative process was available to Mr. Simpson. *See Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015) ("Because exhaustion is an affirmative defense, the defendants must establish that an administrative remedy was available and that [the plaintiff] failed to pursue it."). "[T]he ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Ross*, 136 S. Ct. at 1858.

The alleged incidents occurred on or about November 16, 2016, but Mr. Simpson was transferred to Marion on November 28, 2016. Nonetheless, he had 12 days while at FCI Terre Haute to file a grievance with Terre Haute while physically there. Although he asserts that he was "in fear for his life" at Terre Haute, he offers no details beyond vague allegations. *See Trask– Morton*, 534 F.3d at 677 ("The nonmoving party must come forward with **specific facts** demonstrating that there is a genuine issue for trial."). Even if he was fearful of filing a grievance at the institution level at Terre Haute, Mr. Simpson could have filed a "sensitive BP-10" directly to the Regional Director by writing the word "sensitive" on the envelope and explaining his reasoning. *See* 28 C.F.R. § 542.14. Mr. Simpson failed to do so.

After his transfer to Marion, because he was to file a grievance within 20 calendar days of the grieved incident, *see* 28 C.F.R. § 542.14(a), Mr. Simpson still had 8 days to file a grievance. However, Mr. Simpson instead waited until December 27, 2016, almost a month late, to file a BP-10 with the BOP North Central Regional Office – not a BP-9 at either Terre Haute or Marion. Mr. Simpson provides no explanation for why he filed a BP-10, albeit improperly as explained further, 41 calendar days after the grieved upon incident.

Nonetheless, the North Central Regional Office denied Mr. Simpson's BP-10 and provided three reasons for the rejection:



Dkt. No. 34-7 at 8. The Regional Office explained that Mr. Simpson needed to file a separate request for each unrelated issue and need to first file a BP-9 request through the institution. The Regional Office also provided that he could resubmit his appeal on the proper form within 10 days of the date of the rejection notice. These instructions were reiterated in the "remarks" section. Mr. Simpson did not follow these helpful instructions nor did he resubmit his appeal on the proper form.

Rather, after waiting 26 days, Mr. Simpson filed a BP-11 to the BOP Central Office, annotating the Regional Office's rejection notice with comments of "only 1 issue" and "wrong." The Central Office also rejected Mr. Simpson's appeal, providing the following reasoning:



Dkt. No. 34-7 at 1. The Central Office concurred with the rational of the Regional Office and instructed Mr. Simpson to "follow directions provided on prior rejection notices." Mr. Simpson did not do so.

The Court understands that the administrative grievance policy can be difficult to understand and follow, but this does not excuse the requirement that Mr. Simpson exhaust his administrative remedies before filing a complaint. Mr. Simpson's defenses to his apparent failure to do so are vague, unsupported by facts or evidence, and lack merit.

The defendant has therefore met his burden of showing that Mr. Simpson failed to exhaust his administrative remedies before filing this lawsuit as to all of the claims in this action. The consequence of these circumstances, in light of 42 U.S.C. § 1997e(a), is that Mr. Simpson's action should not have been brought and must now be dismissed without prejudice. *See Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) (holding that "*all* dismissals under § 1997e(a) should be without prejudice").

## IV. Conclusion

The defendant's motion for summary judgment, Dkt. No. 34, is **granted**. Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 5/8/18

_William T. Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Distribution:

DAVID L. SIMPSON
18701-026
MARION - USP
MARION U.S. PENITENTIARY
Inmate Mail/Parcels
P.O. BOX 1000
MARION, IL 62959

Gina M. Shields
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
Gina.Shields@usdoj.gov